921 A.2d 811

**Jason Allen BARBER, et al.**

v.

**CATHOLIC HEALTH INITIATIVES, INC., et al.**

No. 2819, Sept. Term, 2004.

Court of Special Appeals of Maryland.

April 30, 2007.

Jonathan E. Goldberg and Bertram M. Goldstein, Columbia, for appellant.

Thomas C. Marriner, Annapolis and Angus R. Everton (Mary Alane Downs, Hunt Valley, James R. Chason, Towson, on the brief), for appellee.

Panel: HOLLANDER, KRAUSER, LAWRENCE F. RODOWSKY, (Retired, specially assigned), JJ.

HOLLANDER, J.

This medical malpractice appeal requires us to consider, *inter alia,* whether a Certificate of Qualified Expert (the "Certificate"), as originally filed or as supplemented, satisfied Md.Code (2002 Repl.Vol.), § 3–2A–04(b) of the Courts and

Judicial Proceedings Article ("C.J.").[1] The matter is rooted in a negligence action filed in the Circuit Court for Baltimore County, alleging survival and wrongful death claims arising from the death of Carolyn Barber, who underwent a repeat coronary bypass on November 24, 2000, and died on the same date. An autopsy revealed that Ms. Barber's pulmonary artery had been punctured.

On November 19, 2003, Jason Allen Barber, as Personal Representative of the Estate of Carolyn Barber, and Jason and Andrew Barber, as surviving sons of Ms. Barber, appellants, filed a Statement of Claim with the Health Claims Arbitration Office ("HCAO")[2] against six physicians and six entities, identified collectively as "Health Care Providers," all appellees here. They are Catholic Health Initiatives, Inc.; St. Joseph Medical Center, Inc.; St. Joseph Medical Center Foundation, Inc.; Cardiac Surgery Associates, P.A.; Cardiac Anesthesia Associates, P.A.; Redmond C. Stewart Finney, Jr., M.D.; Lope T. Villa, Jr., M.D.; Lope T. Villa, Jr., M.D., P.A.; Garth Raymond McDonald, M.D.; Paul Gerard Burns, M.D.; David R. Larach, M.D.; and Ursula Adourian, M.D.[3] Thereafter, appellants timely filed their Certificate, in which the text refers to the "Health Care Providers," but does not rename each appellee.

---

1. The 2002 Replacement Volume of the Courts and Judicial Proceedings Article has since been replaced by the 2006 Replacement Volume. However, unless otherwise noted, we shall rely on the statute that was in effect when suit was filed.

2. As part of the Maryland Patients' Access to Quality Health Care Act of 2004, 2004 Sp. Sess., Chapter 5, Subtitle 3, the Health Claims Arbitration Office was renamed the Health Care Alternative Dispute Resolution Office, effective January 11, 2005.

3. Cardiac Surgery Associates, P.A.; Dr. Finney; Dr. Villa; Lope T. Villa, Jr., M.D., P.A.; Dr. McDonald; Dr. Burns; Cardiac Anesthesia Associates, P.A.; David R. Larach, M.D.; and Dr. Adourian (hereinafter, the "Physician appellees"), filed a joint brief. Catholic Health Initiatives, Inc., St. Joseph Medical Center, and St. Joseph Medical Center Foundation (hereinafter, the "Medical Center appellees"), filed their own joint brief. Because all of the appellees essentially advance the same contentions, we shall refer to them collectively as "appellees," unless otherwise noted.

After waiving arbitration, appellants filed suit against the appellees on May 12, 2004. A few months later, on July 15, 2004, this Court issued its decision in *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 853 A.2d 813, *cert. denied*, 384 Md. 158, 862 A.2d 993 (2004), ruling that the certificate at issue in that case was defective. By that point, several of the appellees in this case had already answered the suit, without challenging appellants' Certificate. After *D'Angelo*, however, almost all of the appellees moved to dismiss, claiming that the Certificate did not comply with Maryland law, as articulated in *D'Angelo*, because it failed to identify each defendant in the caption or body of the Certificate.[4] Opposing the motion, appellants maintained that the Certificate plainly referred to all of the defendants previously named in the Statement of Claim filed with the HCAO.

Following a hearing held on January 31, 2005, the circuit court granted the motions. Its ruling is reflected in an Order of February 2, 2005. On February 11, 2005, appellants filed a "Motion for Reconsideration, or in the Alternative, Motion for Leave to file Supplemental Certificate of Qualified Expert, Nunc Pro Tunc," which the circuit court denied on March 15, 2005.

On appeal, appellants pose two questions, which we quote:

I. Did the Circuit Court err in granting the Appellees' Motion to Dismiss?

II. Did the Circuit Court err or abuse its discretion in denying Appellants' request to file a supplemental Certificate of Qualified Expert pursuant to Md. Cts. & Jud. Proc.Code Ann. § 3–2A–04(b)(5)?

For the reasons set forth below, we conclude that the court erred in dismissing the suit on the ground that the Certificate failed to name each defendant/appellee. Therefore, we shall reverse and remand for further proceedings.[5]

---

4. We were unable to locate in the record a motion filed by St. Joseph Medical Center Foundation. Moreover, Dr. Burns did not move to dismiss, presumably because he had not yet been served.

5. Dr. Burns, an out-of-state resident, has moved to dismiss the appeal, claiming he was improperly served on May 23, 2005, more than a year

**318**

## I. FACTUAL AND PROCEDURAL SUMMARY

Appellants filed a "Claim Form" with the HCAO on November 19, 2003. Under the section entitled "HEALTH CARE PROVIDER(S)," and continuing on an addendum with another title of "Health Care Provider(s)," appellants identified each of the appellees by full name and address. On the same date, appellants filed a "Statement of Claim" with the HCAO, pursuant to the Health Care Malpractice Claims statute, C.J. §§ 3–2A–01 to 3–2A–09, in which they again specifically named all twelve appellees in the caption. At the end of the caption, all twelve were identified collectively as "Health Care Providers." In addition, all twelve were again mentioned in the text of the Statement of Claim, where they were referred to as "Health Care Providers." [6]

On or about February 12, 2004, i.e., within 90 days of filing the Statement of Claim, appellants filed a "Request for Exten-

---

after process was issued. We note that the clerk never issued a notice of contemplated dismissal under 2–507(b). In any event, Dr. Burns had no opportunity to raise this claim below, under Rule 2–322(a), because his response to the suit was not yet due when the circuit court dismissed the case on June 9, 2005. Moreover, the appeal was noted on June 29, 2005, before Dr. Burns filed a responsive pleading. Because the circuit court has not considered this contention, we shall deny the motion and remand for further proceedings as to this issue.

6. Specifically, the text of the first paragraph of the Statement of Claim provides:

### STATEMENT OF CLAIM

Jason Allen Barber, as Personal Representative of the Estate of Carolyn L. Barber, Deceased, and individually and in his own right, as surviving son of Carolyn L. Barber, Deceased, and Andrew Barber, individually and in his own right, as surviving son of Carolyn L. Barber, Deceased, Claimants, by their undersigned attorneys, bring the following claims against Catholic Health Initiatives, Inc. a/k/a Catholic Health Initiatives, St. Joseph Medical Center, Inc. a/k/a Saint Joseph Medical Center, St. Joseph Medical Center Foundation, Inc., Cardiac Surgery Associates, P.A., Redmond C. Stewart Finney, Jr., M.D., Lope T. Villa, Jr., M.D., Lope T. Villa, Jr., M.D., P.A., Garth Raymond McDonald, M.D., Paul Gerald Burns, M.D., Cardiac Anesthesia Associates, P.A., David Larach, M.D., and Ursula Adourian, M.D., *Health Care Providers,* and for causes of action state....(Emphasis added.)

sion of Time in which to File Claimants' Certificate of Qualified Expert." Although they sought an extension until May 17, 2004, appellants filed their "Claimants' Certificate Of A Qualified Expert," along with an accompanying medical report signed by Kenneth M. LeDez, M.B., Chg., FRC,[7] on February 17, 2004.

Because the Certificate is central to the dispute, we have reproduced its caption:

| | |
|---|---|
| JASON ALLEN BARBER, as Personal Representative of the Estate of CAROLYN BARBER, Deceased and Individually, as surviving Son of CAROLYN L. BARBER 6320 Greenspring Avenue, # 205 Baltimore, MD 21209 | * HCA No.: 2003-613<br>*<br>*<br>*<br>*<br>*<br>*<br>* |
| and | *<br>* |
| ANDREW BARBER, Individually, as Surviving Son of CAROLYN BARBER, Deceased 304 Forrest Street Baltimore, Maryland 21202 | *<br>*<br>*<br>*<br>* |
| Claimants | *<br>* |
| vs. | *<br>* |
| **CATHOLIC HEALTH INITIATIVES, INC., a/k/a CATHOLIC HEALTH INITIATIVES, et al** | *<br>*<br>*<br>*<br>* |
| **Health Care Providers** | * |

(Emphasis added.)

The body of the Certificate provides, in part:

I HEREBY CERTIFY that I have reviewed the medical records and/or other documentation pertaining to the histo-

---

**7.** In the Certificate, LeDez averred that he is a licensed physician. In their reply brief, appellants state: "Dr. LeDez is a physician, trained in Canada, who has been licensed by the Medical Counsel of Canada for nearly 20 years. Dr. LeDez refers to himself as 'Dr.', as do his patients and colleagues."

ry, conditions, injuries, and death of Carolyn Barber, as such relate to the incidents involved herein.

I HEREBY CERTIFY that *there were departures from and/or violations of the standards of medical care rendered to Carolyn Barber by the Health Care Providers.* Such departures and/or violations were the direct and proximate cause of injury to Carolyn Barber, and were a substantial factor in causing her death.

(Emphasis added.) The accompanying certificate of service listed all twelve appellees.

Dr. LeDez's medical report of February 16, 2004, is also noteworthy. There, he wrote, in part:

I have reviewed the medical records and other pertinent materials regarding Carolyn Barber. I have concluded that *the care rendered by the Health Care Providers* fell below and deviated from the accepted medical standards for health care providers of similar training and experience. *Furthermore, it is my opinion that such Health Care Providers' actions or omissions did proximately cause injury to Carolyn Barber,* and was a substantial factor in causing her death.

(Emphasis added.)

Appellants subsequently elected to waive arbitration pursuant to C.J. § 3–2A–06B. Thereafter, as noted, they filed their negligence suit against the appellees on May 12, 2004.[8]

Dr. Finney, St. Joseph Medical Center, Inc., Dr. Villa; Dr. Villa P.A., Dr. McDonald; and Cardiac Surgery Associates, Inc. all answered the Complaint, without raising any challenge to the adequacy of the Certificate.[9] Cardiac Anesthesia Asso-

---

8. The allegations of malpractice are not of consequence to the issues on appeal. Therefore, we need not review them.

9. Appellants have not argued that these appellees waived their challenge to the Certificate based on having previously answered the suit. The Medical Center appellees explain that they did not initially move to dismiss because "the only claims against these Appellees was vicarious

ciates, P.A. and Dr. Adourian filed a "Motion to Dismiss." Doctor Larach filed a "Motion To Strike The Certificate Of Merit Signed By Kenneth M. LeDez, M.D. And To Dismiss David R. Larach, M.D." Thereafter, Cardiac Surgery Associates, P.A., Dr. Finney; Dr. Villa,; Dr. McDonald; as well as their professional associations, also filed a "Motion to Dismiss." The appellees relied on our then recent decision in *D'Angelo*, 157 Md.App. 631, 853 A.2d 813, arguing that the Certificate did not comply with the requirements of C.J. § 3–2A–04, because appellants failed to name each appellee, either in the caption or the text.

In their response, appellants sought to distinguish *D'Angelo*, and argued that the Certificate fully complied with the statute. Nevertheless, they submitted an affidavit from Dr. LeDez, dated November 23, 2004, clarifying that, by using the term "Health Care Providers" in the Certificate, he was referring to all of the appellees. LeDez averred, in part:

3. After reviewing the records, on February 17, 2004, I signed a Certificate of Qualified Expert, in which I certified that "there were departures from and/or violations of the standards of medical care rendered to Carolyn Barber by the Health Care Providers". At the time I signed the Certificate of Qualified Expert, by "Health Care Providers", I meant the physicians, Lope T. Villa, Jr., M.D.; Redmond C. Stewart Finney, Jr., M.D.; Garth Raymond McDonald, M.D.; Paul Gerard Burns, M.D.; David Larach, M.D.; and Ursula Adourian, M.D. I also meant Lope T. Villa, Jr., M.D., P.A.; Cardiac Surgery Associates, P.A.; Cardiac Anesthesia Associates, P.A.; St. Joseph Medical Center, Inc., a/k/a Saint Joseph Medical Center Catholic Health Initiatives, Inc., a/k/a Catholic Health Initiatives; and St. Joseph Medical Center Foundation, Inc., which at that time, I

liability for those physicians," so "the entity defendants would 'rise or fall' with the motions filed by the individuals."

understood to be responsible for the actions of the physicians.

(Emphasis added.)

In a "Supplemental Affidavit" of January 25, 2005, Dr. LeDez further averred, in part:

2. Subsequent to my review of the records and prior to signing the Certificate of Qualified Expert, I discussed the matter with Jeffrey S. Goldstein. Mr. Goldstein advised me that in the Statement of Claim filed by Ms. Barber's family, Lope T. Villa, Jr., M.D., Redmond C. Stewart Finney, Jr., M.D., Garth Raymond McDonald, M.D., Paul Gerard Burns, M.D., David Larach, M.D., and Ursula Adourian, M.D., were named as Health Care Providers. Mr. Goldstein further advised me that these physicians were agents and/or employees of Lope T. Villa, Jr., M.D., P.A., Cardiac Surgery Associates, P.A., Cardiac Anesthesia Associates, P.A., St. Joseph Medical Center, Inc., a/k/a Saint Joseph Medical Center, Catholic Health Initiatives, Inc., a/k/a Catholic Health Initiatives, and St. Joseph Medical Center Foundation, Inc., and that those entities were responsible for the actions of the physicians. Mr. Goldstein also advised me that those entities were also named as Health Care Providers in the Statement of Claim.

3. Accordingly, at the time I signed the Certificate of Qualified Expert I knew that Lope T. Villa, Jr., M.D., Redmond C. Stewart Finney, Jr., M.D., Garth Raymond McDonald, M.D., Paul Gerard Burns, M.D., David Larach, M.D., Ursula Adourian, M.D., Lope T. Villa, Jr., M.D., P.A., Cardiac Surgery Associates, P.A., Cardiac Anesthesia Associates, PA., St. Joseph Medical Center, Inc., a/k/a Saint Joseph Medical Center, Catholic Health Initiatives, Inc., a/k/a Catholic Health Initiatives, and St. Joseph Medical Center Foundation, Inc., were the Health Care Providers named in the Statement of Claim filed by the family of

Carolyn Barber, and *by "the Health Care Providers"*, *I meant all of those physicians and entities.*

(Emphasis added.)

The court conducted a motion hearing on January 31, 2005, at which the following transpired:

[THE COURT]: The basis of the motion is that a certificate of merit was not filed that specified how the individual physicians and/or hospital breached the applicable standard of care; is that it in a nutshell?

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: Not exactly, Your Honor. The *D'Angelo* case, if I may, also requires that each individual health care provider be named on the certificate, not just how they violated, but each individual health care provider must be named so that Plaintiffs aren't given just a carte blanche to sue whomever they want with the health care providers.

[THE COURT]: What's different between that and what I said, that each individual health care provider—it's not specified how they breached the standard of care in this case, what difference would that make?

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: I guess what I was saying is, it's not just how they violated—

[THE COURT]: But they didn't do that, right? They didn't say how this doctor breached the standard of care, that doctor breached the standard of care, that doctor breached the standard of care or St. Joseph's Hospital breached the standard of care, right? They didn't do that?

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: Correct.

[THE COURT]: They're saying in their Certificate of Merit all health care providers breached the standard of care?

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: Correct.

[THE COURT]: So what's the difference?

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: My point is, it's not just—in other words, they don't have to say all health care providers deviated by A, B, C, D, it's also that they have to spell out which physicians or health care—

[THE COURT]: I don't see the difference in what you're saying, and I'm saying academically that may be interesting if they didn't specify how each health care provider breached the standard of care, then they haven't complied with the requirements of *D'Angelo.*

[COUNSEL FOR CARDIAC SURGERY ASSOCIATES & DR. FINNEY]: I agree.

Thereafter, appellants' counsel argued:

Specifically if I may address Your Honor's first point, I think if you ask every single defense counsel in this room, they will tell you, admit, that it is not required that a certificate specify how the health care provider deviated from the standard of care, rather what they're saying is that you have to say that a specific health care provider did deviate. They're not here saying that you have to say how.

\* \* \*

Their point here is that their claim is that *D'Angelo* requires that I name by name by no other method the actual individuals who deviated. . . .

\* \* \*

Your Honor, the issue in this case is does—there's two issues. *The first issue is, does our certificate of qualified expert which says the capital H, capital C, capital P, Health Care Providers, and obtained three months after we filed the statement of claim, does that identify who the health care providers are?*

Well, when [the] *D'Angelo* case first came down, I looked at my certificate. I said, well, I said capital H, capital C, capital P, *Health Care Providers, which is an identification of a discrete group of individuals and entities at that point.*

But if anyone ever wants to say that under *D'Angelo* I have not complied, the certificate does not comply, which had never been said to me before in many years of practice, I will obtain an affidavit from Dr. LeDez, since I had had a discussion with Dr. LeDez before he signed the Certificate of Qualified Expert, and he will say by health care providers I meant all of these health care providers who were named in the Complaint. They were a specific group of doctors who were involved in a redo coronary bypass surgery. It was only the surgeons and only the anaesthesiologists, all of whom Dr. LeDez had felt had deviated from the standard of care.

When I called him to ask him if he would sign an affidavit, because obviously the motion was filed, he agreed to do so.

I obtained the affidavit from Dr. LeDez specifying that by Health Care Providers, capital H, capital C, capital P, I knew I meant and listed the entities and the doctors in this case.

\* \* \*

I obtained a second affidavit from Dr. LeDez and this time said, yeah, I discussed it with Mr. Goldstein, at the time I signed the certificate of qualified expert I knew that the named health care providers were blah, blah, blah, blah and by the capital H, capital C, capital P, Health Care Providers, I meant all twelve of those health care providers, the six individual surgeons and anesthesiologists who were in the surgery and the entities by whom I had advised him were vicariously responsible for the actions. . . .

(Emphasis added.)

Dr. Adourian's counsel responded:

[I]t's clear that the individual Defendants, the health care providers as to whom there is an allegation of negligence, must be named and that's where this certificate falls down.

* * *

[T]hey do have to be named, and that's what, that's what *D'Angelo* holds. And *D'Angelo* very specifically rejects the notion that you can name them as a class. . . .

Counsel for Dr. Finney and Cardiac Surgery added: "[T]he real problem is who is named individually. It's the individuals [who] must be named individually." The following exchange ensued:

THE COURT: It seems to me that the intent of the Legislature clearly was that a Certificate of Merit was to say this doctor committed malpractice by deviating from this, did this, did that, did whatever. . . .

* * *

Now, what we are fighting about is, does this Certificate of Merit comply under *D'Angelo?* It doesn't. It clearly doesn't. You can't say, here is the group, they all committed malpractice. You can't do it, all of the doctors, not naming them individually. All of the doctors that treated them committed malpractice, you can't do that.

[APPELLANTS' COUNSEL]: I didn't say that, Your Honor. [THE COURT]: Pretty close to that.

[APPELLANTS' COUNSEL]: Let me show you, if I could, my Certificate of Qualified Expert. And *they acknowledged that if you list the names, that's sufficient.*

The certificate, which is attached as Exhibit B–2 and also attached to there is at the very bottom you see that it says by the health care providers.

[THE COURT]: That's what you can't do, *D'Angelo* says you can't do.

* * *

[APPELLANTS' COUNSEL]: Your Honor ... I assure you, that what the Court of Special Appeals was doing in *D'Angelo* was figuring out what this certificate meant. And what they figured out in *D'Angelo,* Your Honor, was that

certificate meant nothing. It doesn't mean anything. Had you asked Dr. LeDez the exact same questions that the defense counsel ... asked the certifiers in the *D'Angelo* case, Dr. LeDez would say, I think these entities are the ones that deviated from the standard of care by health care providers, that's what I meant.

When they asked these people in the *D'Angelo* case about the foregoing, they didn't know anything about it. In fact, they hadn't even reviewed all of the medical records at the time they signed it.

\* \* \*

The bottom line is, Your Honor, that what the Court was doing in *D'Angelo* was looking to see if you look at the statute, and Your Honor read the statute, and of course *the statute doesn't say anything about naming names, the statute says, you have to say that a Defendant deviated from the standard of care and that the deviation caused the injury.*

*Your Honor, this says specifically, this certificate says, that the capital H, capital C, capital P, Health Care Providers, the very people who were named in the case. It can't be anyone else.*

\* \* \*

The bottom line is that there's no question if you look at the Affidavit of Dr. LeDez that *when he said the health care providers he meant the individuals named in this case* ....

You have two affidavits ... an affidavit and supplemental affidavit from Dr. LeDez, Your Honor, that both affirmatively answer the questions that the doctors were asked in the *D'Angelo* case, and I might query this, Your Honor, in a case where there's one health care provider and the certificate says the capital H, capital C, capital P, Health Care Providers, the health care provider deviated from the standard of care, can there be any question that that's a certificate as required by *D'Angelo* ....

* * *

Your Honor, at the time that I filed the certificate, the Complaint, the Statement of Claim is already filed.

[THE COURT]: I understand your argument. I am absolutely convinced that this Certificate of Merit does not comply with *D'Angelo*. I'm convinced of that. So I've heard the argument. I don't accept it. *I think that what D'Angelo requires is that the health care provider that is deemed to have violated the standard of care be named. It's clear in this Certificate of Merit nobody is named. It just says by the health care providers. I don't think that complies with the requirements of D'Angelo.*

* * *

Well, I've ruled on that. Now, as I understand it, the allegations of negligence in this case are alleged to have occurred in November of 2000, right?

[APPELLANTS' COUNSEL]: Yes.

[THE COURT]: Okay.

[APPELLANTS' COUNSEL]: Yes, correct.

[THE COURT]: So the statute runs November of 2005.

[APPELLANTS' COUNSEL]: It ran November of 2003, Your Honor.

[THE COURT]: Okay, what is, is. That's the ruling.

(Emphasis added.)

The court's "Ruling," docketed on February 2, 2005, stated:

Having considered the argument of counsel and the pleadings previously filed, it is the ruling of the court that Defendants' Motions to Dismiss for Failure to File a Certificate of Merit under Courts and Judicial Proceedings, Sec. 3–2A–04 (Paper Nos. 29000, 31000, and 33000) is GRANTED. The certificate of merit filed in this case does not comply with the requirements of *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 853 A.2d 813.

It is undisputed that limitations had expired when the suit was dismissed. Therefore, the dismissal was, in effect, a dismissal with prejudice.

On February 11, 2005, appellants filed a "Motion for Reconsideration or, in the Alternative Motion for Leave to File Supplemental Certificate of Qualified Expert, Nunc Pro Tunc," arguing:

3. Pursuant to Ann.Code of Md., Cts. and Jud. Proc. Art. § 3–2A–04 (b)(1)(i), dismissal of a claim for failure to file a Certificate of Qualified Expert is without prejudice. However, given the expiration of the statute of limitations, the dismissal of this case would necessarily effectively be a dismissal, with prejudice, as Plaintiffs' subsequent filing would be time-barred.

4. Inasmuch as Plaintiffs' Certificate of Qualified Expert was filed five months before the Court of Special Appeals rendered its decision in *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 853 A.2d 813 (2004), Plaintiffs, as well as the Director of the Health Claims Arbitration Office, reasonably thought that the Certificate filed on behalf of the Barbers was a proper certificate pursuant to Md. Cts. and Jud. Proc. Art., § 3–2A–04(b). Accordingly, instead of dismissing the claim for failure to file a valid Certificate of Qualified Expert, or granting the Claimants an additional 90 days, pursuant to § 3–2A–04 (b)(1)(ii), the Director issued an Order of Transfer of this claim to this Honorable Court. If Plaintiffs' Certificate was obviously insufficient, or it [sic] they had failed to file a Certificate at all, the remedy would have been as such, i.e., to give an additional 90 days.

5. Obviously, had the *D'Angelo* case been decided prior to Plaintiffs having filed their Certificate in this case, Plaintiffs would not be in this predicament. They would have listed the names of the Health Care Providers in their Certificate instead of saying "the Health Care Providers", which Plaintiffs contend identifies them but, as this Court has held, clearly does not list their names.

6. In addition, as explained at length in Plaintiffs' original response to Defendants' Motions to Dismiss, the factual

predicate of *D'Angelo* is simply not the same or even close to that of this case.

\* \* \*

8. In the alternative, given that the Plaintiffs were never afforded the additional 90 days that they were entitled to pursuant to § 3–2A–04 (b)(1)(ii), Plaintiffs would submit that this Honorable Court grant them leave to file a Supplemental Certificate of Qualified Expert, in the form attached hereto as Exhibit 1, with the Health Claims Arbitration Office, nunc pro tunc.

9. Such an extension would also be permissible under § 3–2A–04(5), which provides "an extension of the time allowed for a filing a[sic] certificate of a qualified expert under this subsection shall be granted for good cause shown."

In opposing the motion, appellees argued, *inter alia,* that it was untimely, as it was filed "almost one year after the original certificate was filed and nine months after the statutory maximum." They argued that "the statutory period for filing the certificate of qualified expert has expired and cannot be extended."

Appellees explained that, if appellants were entitled to an extension under C.J. § 3–2A–04(b)(1)(ii), the panel chairman was limited to allowing an extension of 90 days (for a total of 180 days in which to file the Certificate). Under C.J. § 3–2A–04 (b)(1)(ii), because the Statement of Claim was filed on November 29, 2003, the Certificate was due, at the latest, by May 17, 2004. Furthermore, they pointed out that, under C.J. § 3–2A–04(b)(5), appellants were required to seek an additional extension *before* the expiration of 180 days on May 17, 2004, and it had to be based on good cause. Because appellants failed to make a timely request, appellees argued that dismissal was mandatory under C.J. § 3–2A–04(b)(1). In their view, the circuit court lacked

jurisdiction to extend the time for filing a certificate of qualified expert beyond 180 days, if the motion for an

extension is filed after the 180 day period.... Thus, the time for filing a substantively valid certificate has lapsed and the Motion for Leave to File Supplemental Certificate is untimely. Any certificate filed after May 17, 2004 is also untimely and must be stricken.

On February 28, 2005, while appellants' motion was pending, appellants filed a Notice of Appeal. Then, on March 15, 2005, the court denied the Motion for Reconsideration, stating:

> While this Court recognizes that the outcome of this ruling is harsh, this Court is bound by the decision of the Court of Special Appeals' [sic] in *D'Angelo v. St. Agnes Health Care [Healthcare] Inc.*, 157 Md.App. 631, 852 [853] A.2d 813 (2004) *cert. denied*, 384 Md. 158, 862 A.2d 993 (2004) and this Court is unable to distinguish this case from the holding in *D'Angelo.*

Appellants filed a second Notice of Appeal on April 14, 2005. Then, on May 5, 2005, this Court remanded the case to allow the circuit court to clarify whether its "ruling of February 2, 2005 applies to all defendants, and if not, then (a) which defendants does it apply to, and (b) should final judgment as to fewer than all defendants or all claims nonetheless be entered pursuant to Maryland Rule 2–602(b)...." By Order filed June 9, 2005, the circuit court stated:

> As requested by the Court of Special Appeals' Order of May 5, 2005, this is to clarify that this Court's prior ruling that the Certificate of Merit filed in this case does not comply with the requirements of *D'Angelo v. St. Agnes HealthCare [Healthcare], Inc.*, 157 Md.App. 631[, 853 A.2d 813] 2004 requires that the Complaint be dismissed in its entirety as to all defendants.

Thereafter, on June 29, 2005, appellants filed a third Notice of Appeal.

## DISCUSSION

### A.

The statutory scheme is central to our analysis. We focus on Title 3, Subtitle 2A ("Health Care Malpractice Claims") of

the Courts and Judicial Proceedings Article.[10]   Title 3, Subtitle 2A established a non-binding arbitration process to resolve medical injury claims lodged against health care providers. At the relevant time, such claims were initially filed with what was then known as the HCAO.   Under the Health Care Malpractice Claims statute, arbitration before the HCAO (or its successor) is "a condition precedent to maintaining a suit in circuit court." *McCready Memorial Hospital v. Hauser*, 330 Md. 497, 512, 624 A.2d 1249 (1993).

C.J. § 3–2A–01(e) defines a "health care provider" to include hospitals and physicians.[11]   C.J. § 3–2A–04 is also pertinent.   At the relevant time, it provided, in part:

**§ 3–2A–04.   Filing of claim;   appointment of arbitrators;   arbitrators' immunity from suit.**

---

**10.**   As noted, we cite to the 2002 Replacement Volume of the Maryland Code.   Suit was filed on May 12, 2004.   While it was pending, by Acts 2004, Sp. Sess. Chapter 5, § 1, effective January 11, 2005, the Legislature made certain changes to the statute.   As amended by Ch. 25, § 1, Acts 2005, effective April 12, 2005, the changes to C.J. §§ 3–2A–04(b) and 3–2A–06(b), among others, are to be construed prospectively;   they do not apply to any case filed before the effective date of the provisions. Nevertheless, it is not entirely clear to us that the procedural changes lack retroactivity.   *See Roth v. Dimensions Health Corp.*, 332 Md. 627, 636–38, 632 A.2d 1170 (1993) (construing 1989 legislative changes to C.J. § 3–2A–04(b)(1), which added a 90 day extension for the filing of a certificate, and concluding that it applied retroactively, despite prospective language, because of legislative intent "to differentiate" between claimants and defendants;   the amendment was procedural;   and the amendment was curative" in nature).

**11.**   In a footnote in the brief of the Medical Center appellees, they assert that "Catholic Health Initiatives is not even a 'health care provider.'   It is not a hospital or other provider as defined in Section 3–2A–01(e) of the Act."   These appellees point out that the entity holds no license to provide health care, and is, instead, a "national health care association. . . ."

The Physician appellees also assert that Catholic Health Initiatives, Inc. "does not even qualify as a 'health care provider' under then-Section 3–2A–01 (e)."   However, they concede that the status of the entity "is not before the Court. . . ."

Because the court below did not decide whether Catholic Health Initiatives, Inc. is a health care provider subject to suit, we agree that the issue is not before us.   For the purpose of this appeal only, we shall assume that it is a health care provider.

(a) *Filing of claim and response*—(1) A person having a claim against a health care provider for damage due to a medical injury shall file his claim with the Director, and, if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physician Quality Assurance and the Medical and Chirurgical Faculty of the State of Maryland.

\* \* \*

(b) *Filing and service of certificate of qualified expert.*— Unless the sole issue in the claim is lack of informed consent:

(1) (i) *Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint.* The claimant shall serve a copy of the certificate on all other parties to the claim or their attorneys of record in accordance with the Maryland Rules.

(ii) *In lieu of dismissing the claim, the panel chairman shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:*

1. *The limitations period applicable to the claim has expired; and*

2. *The failure to file the certificate was neither willful nor the result of gross negligence.*

(2) A claim filed after July 1, 1986, may be adjudicated in favor of the claimant on the issue of liability, if the defendant disputes liability and fails to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant served the certificate of a qualified

expert set forth in paragraph (1) of this subsection on the defendant.

\* \* \*

(3) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached. Discovery is available as to the basis of the certificate.

\* \* \*

(5) *An extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for good cause shown.*

(Emphasis added.) [12]

In pertinent part, C.J. § 3–2A–05 states:

### § 3–2A–05. Arbitration of claim.

\* \* \*

(j) *Authority to lengthen or shorten time limitation.*—Except for time limitations pertaining to the filing of a claim or response, the Director or the panel chairman, for good cause shown, may lengthen or shorten the time limitations prescribed in subsections (b) and (g) of this section and § 3–2A–04 of this article.

Pursuant to C.J. § 3–2A–04 (b)(1)(i), a claim is subject to dismissal if the claimant fails to file with the Director of HCAO, within 90 days after filing the claim, a certificate of

---

**12.** C.J. § 3–2A–04 (b)(1)(ii) (2006 Repl.Vol.) now provides:

(ii) In lieu of dismissing the claim **or action,** the panel chairman **or the court** shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim **or action** has expired; and . . . .

(Boldface added to show new language.)

We pause to highlight that the General Assembly conferred authority on the "court" in a section that had been viewed previously as pertaining to the pre-court phase. We also point out that there is no change to C.J. § 3–2A–04(b)(5) in the 2006 Replacement Volume.

qualified expert attesting to: 1) the defendant's departure from the standard of care, and 2) that the deviation in care was the proximate cause of the injury. To relieve the harshness of that provision, the General Assembly enacted an amendment to the statute in 1989, reflected in C.J. § 3–2A–04 (b)(1)(ii), by which, "[i]n lieu of dismissing the claim, the panel chairman shall grant an extension of no more than 90 days for filing the certificate . . .," if limitations has expired as to the claim *and* the "failure to file the certificate was neither willful nor the result of gross negligence." As the Court explained in *Roth v. Dimensions Health Corp.*, 332 Md. 627, 638, 632 A.2d 1170 (1993), the amendment was "a curative act, intended to prevent the dismissal of potentially meritorious claims based upon an inadvertent failure to file the certificate of a qualified expert within 90 days of the original complaint." That same section was modified again in 2004 to expressly permit the court (in addition to the panel chair) to extend by 90 days the time for filing the certificate.

Two other statutory provisions are pertinent with regard to the time for filing a certificate. C.J. § 3–2A–04(b)(5) provides that an extension "shall be granted for good cause shown." In addition, in the context of arbitration, upon a showing of "good cause," C.J. § 3–2A–05(j) permits the HCAO Director or panel chair to lengthen or shorten the time limitations of C.J. 3–2A–04 (and other provisions, not relevant here).

In this case, we are not concerned with whether the Certificate was timely filed. Rather, we are concerned with the sufficiency of a timely filed Certificate. By the time the claim of invalidity was first raised, the 180 day extension period under C.J. § 3–2A–04 (b)(1)(ii) had already expired. Moreover, as we have seen, C.J. § 3–2A–04(b)(5) speaks of a good cause extension *to file* a certificate, but here the Certificate had been timely filed. If the content of the Certificate is deemed defective, we are then faced with the issues of whether it could be amended by affidavit of the attesting expert, or whether appellants were entitled to a good cause extension to file a new Certificate. The statute is silent as to whether, when, or how a defective certificate may be amended or cured,

or if, instead, it is void *ab initio.* Moreover, the good cause question leads to a host of other questions, including the proper timing of such a request and the authority of the court, as opposed to the Director or panel chair, to grant such an extension.

## B.

Appellants argue that the court erred because their Certificate "conformed" to C.J. § 3–2A–04(b). Characterizing the wording of C.J. § 3–2A–04 (b)(1)(i) as "clear and unambiguous," they insist that it does not "require that the allegedly negligent Health Care Providers be identified by their proper name." Relying on "the plain wording of the statute," they argue that "all that a Claimant's certificate needs to contain is an attestation from an expert witness that there was a departure from the standards of care and that the departure from the standards of care was a proximate cause of the alleged injury." Appellants add: "There is no requirement under the statute that the certificate name or label the specific individuals to whom the certificate applies." Therefore, appellants insist that the Certificate "should not have been rejected by the Circuit Court."

According to appellants, the use of the phrase "Health Care Providers" in the Certificate satisfied any requirement of specificity, because it clearly was a reference to a corresponding and discrete group "named, listed, and identified" in the Statement of Claim as the "Health Care Providers." In other words, they posit that "Health Care Providers" was a defined term and a shorthand reference to the "parties to the litigation," as was "set forth plainly and unambiguously in the statement of claim." Appellants add:

These are the same Health Care Providers who were named as Defendants when the case was filed in the Circuit Court. The listing of each Health Care Provider in the caption of the Statement of Claim identifies the licensed professionals alleged to be negligent. The Health Care Providers named in the Statement of Claim and listed in the caption were

referred to as "the Health Care Providers" just as they were referred to as "the Defendants" in the Circuit Court. This is consistent with Maryland Rule 1–301 . . . .

In addition, appellants argue:

Appellants' certificate states that "the Health Care Providers" breached the standard of care and therefore the certificate clearly identifies the licensed professionals against whom it applies. Anyone who read this file, or the Health Claims Arbitration Office file, or the Circuit Court file, would know to whom the Certificate refers when it states "the Health Care Providers." For anyone to argue otherwise would be an absurdity.

Appellants continue:

The individual Health Care Providers who were sued in the case and individually listed in the case caption were collectively referred to in the certificate by their collective title "the Health Care Providers." This is no different than referring to a party in a pleading or at trial as their status in the case: Plaintiff or Defendant. To hold that this is insufficient to identify a specific individual would require that all references in the future to a party in pleadings, discovery, and trial would have to be to the party's proper name and not to their standing in the case. To further confirm what was meant in this case, Dr. LeDez signed two affidavits that affirm that his use of "Health Care Providers" in the certificate referred to each and all of the Health Care Providers listed in the Statement of Claim. The Circuit Court's holding in this case turns common sense and Maryland law on their collective heads.

Moreover, appellants contend that *D'Angelo* is distinguishable from the case *sub judice*. They explain:

In *D'Angelo*, Plaintiffs' certifying expert witnesses certified that they had reviewed the medical records of the health care providers named in the claim when, in fact, no claim had been filed and they testified that when they signed their certificates prior to filing of the Statement of Claim, they did not know who was going to be sued, *D'Angelo*, 157

Md.App. at 640 [853 A.2d 813]. In the instant case, Dr. LeDez had reviewed the records and held the required opinion concerning the named Health Care Providers prior to the submission of the Certificate and accompanying report. Unlike *D'Angelo*, Dr. LeDez was aware prior to signing his Certificate of Qualified Expert, who were named as Health Care Providers.

Thus, appellants assert: "There is no dispute that the Defendants who are named in the Complaint are the same health care providers that Dr. LeDez certified were negligent." Unlike *D'Angelo*, where the "caption listed a Health Care Provider who was never named in the Statement of Claim as a Health Care Provider," appellants point out that here "a Health Care Provider who was sued in the case is listed in the caption on the certificate." Appellants also observe that the *D'Angelo* certificate "simply stated that 'I have concluded that the foregoing medical providers failed to comply with the standards of care....'" *D'Angelo*, 157 Md. App. at 637, 853 A.2d 813 (emphasis omitted). They argue that, unlike in this case, there were no "foregoing medical providers" in *D'Angelo*, because the statement of claim had not yet been filed there. Appellants also point out that in *D'Angelo*, unlike in this case, the "Certificates of Qualified Expert were not accompanied by a report as required by § 3–2A–04(b)(3)." According to appellants, this Court considered that omission significant in holding the Certificate deficient in *D'Angelo*.

In addition, appellants complain that the circuit court erred or abused its discretion in denying their revisory motion, and in failing to grant "an extension of time to file a new Certificate of Qualified Expert." Further, they complain that the circuit court ignored "the draconian effect of dismissing the case without prejudice where the statute of limitations had expired (making it a dismissal with prejudice)...."

Citing *Navarro–Monzo v. Washington Adventist Hospital*, 380 Md. 195, 844 A.2d 406 (2004), discussed *infra*, appellants suggest that, under C.J. § 3–2A–04(b)(5), "a request for an

extension of time to file a certificate of qualified expert for good cause shown may be requested beyond the time set forth to file a certificate as set forth in [C.J.] § 3–2A–04(b)(1)." Therefore, appellants assert: "Given the drastic nature of *D'Angelo,* good cause exists in this case, and the Circuit Court erred by not granting Appellants an extension of time."

Appellees counter that the court properly granted the motions to dismiss, because the Certificate was invalid; it "did not identify any individual health care providers as having deviated from accepted standards of care, and thus failed to conform to the requirements of the rule in *D'Angelo* . . . ." They assert:

Dr. LeDez's Certificate states, in effect, that there were *some* departures from standards of care by the health care providers which caused Carolyn Barber injury, but he does not attest that all of the health care providers deviated from accepted standards of care, nor does he attest which, if any, of the deviations from accepted standards of care by these unidentified health care providers actually caused injuries to the Plaintiffs' decedent.

Complaining that only Catholic Health Initiatives, Inc. was listed in the Certificate's caption, the Physician appellees argue:

[I]it is not sufficient under the statute to simply identify a corporate entity which, at most, is vicariously liable for the acts of a health care provider in order to satisfy the requirement of naming one or more specific health care providers in the certificate of merit, as articulated in *D'Angelo.* In a multiple-defendant case, as here, where no specific health care providers are identified in the body of the certificate, and the only defendant identified in the caption is an employer, this does not satisfy the requirements of § 3–2A–04(b)(1) to maintain a claim against any defendant.

Only an individual health care provider, by some act or omission, can depart from the standard of care. An employer, and certainly a holding company, whose liability on the

claim can only be vicarious, has not committed any act or omission constituting a departure from the standard of care. The gate-keeping function of the certificate of merit requirement is not satisfied by naming only a holding company in the caption of a claim that includes multiple individual health care providers as defendants, without identifying in the body of the certificate the individual defendant or defendants who, in the certifying expert's opinion, departed from the standard of care.

Similarly, the Medical Center appellees contend:

A Certificate attesting to "a departure from the standards of care," without ascribing the departure to the persons named in the claim, is inadequate. The actions of two or more persons may have caused an injury. A claimant may, for tactical reasons, choose to sue less than all of those persons. A certificate attesting to "a breach", without identifying the allegedly negligent person, makes it impossible to determine if the expert is certifying a breach by the person or persons named in the claim, or instead some non-defendant.

\* \* \*

[A] certificate which only attests to "a" departure, without linking the departure to the defendant(s), does not serve the statutory purpose.

As to appellants' argument that Dr. LeDez's affidavits cured any deficiencies in the Certificate, appellees insist that "there is nothing in the statutes or *D'Angelo* to validate" the argument that the "Affidavits somehow 'relate back'" to the original filing. They rely on *Debbas v. Nelson,* 389 Md. 364, 885 A.2d 802 (2005), in which the Court determined that a certificate that is facially valid when filed may not be invalidated later by an expert's subsequent change of view in regard to a deviation from accepted standards of care. According to appellees, the converse is also true: a certificate that is invalid when filed cannot be cured after the fact.

Further, appellees assert that appellants' "alternative 'Motion for Leave to File Supplemental Certificate of Qualified Expert, *Nunc Pro Tunc*' was not properly before the court because it was filed after entry of judgment at the trial court level against the plaintiffs." [13] They explain that appellants did not timely make any motion pursuant to C.J. § 3–2A–04 (b)(5) or § 3–2A–05 (j), for an extension of time in which to file a new Certificate on the basis of "good cause." They add that it is "doubtful whether, under the version of § 3–2A–04(b)(4) applicable to this action (filed prior to January 1, 2005), a Circuit Court could pass an order extending the time for filing a certificate of qualified expert for good cause or otherwise." Appellees explain:

> Prior to the extensive amendments to § 3–2A–04 included within Chapter 5 of the 2004 Maryland Laws, First Special Session, the Statute generally restricted the powers to grant extensions for the filing of a certificate of qualified expert to the Panel Chair or Director of the Health Claims Arbitration Office, as applicable. The power to grant such extensions were first explicitly granted to a Circuit Court in the amendments to this Section that were included with Chapter 5, Laws of 2004, First Special Session.

Accordingly, appellees contend:

> This is consistent with § 3–2A–06B of the Courts & Judicial Proceedings Article, as it existed prior to the changes wrought in the 2004 Special Session, essentially permitting unilateral waiver of arbitration only after the plaintiff has filed a valid certificate of qualified expert in the Health Claims Arbitration Office. Where, as here, the certificate of qualified expert is not valid, then the Plaintiff has not satisfied the condition precedent to the exercise of jurisdiction by the Circuit Court, and the Circuit Court would appear to have no authority to render a ruling permitting the filing of such a certificate *nunc pro tunc.*

---

**13.** Appellants filed their motion on February 11, 2005, but the court's ruling was docketed on February 2.

Appellees concede that "the trial Court *could* in all probability address the propriety of a 'good cause' motion for extension under the current version of [C.J.] § 3–2A–04(b)(5)...." But, they argue that, "by virtue of the changes made in Chapter 5, Acts of 2004, First Special Session, those changes are not applicable to the instant case because it was filed prior to the effective date of that Act.[ ]"

Moreover, appellees assert that appellants cannot claim "good faith." They explain that *D'Angelo* was published in July 2004, "yet Plaintiffs' counsel took no procedural steps to seek an extension of time to file a proper certificate of merit prior to the entry of judgment in this case on February 2, 2005."[14] Claiming that the trial court did not abuse its discretion in denying appellants' motion for reconsideration, appellees argue:

It is to be particularly borne in mind that at no time prior to the entry of the judgment at issue, had the Plaintiffs filed any motion for leave to file a supplementary certificate of merit, showing "good cause" or otherwise. The trial Court noted that the Plaintiffs' Motion failed to offer any new information or point of law in support of their position, and was a reiteration of their earlier argument before the Court at the motions hearing. Since the trial Court's ruling at the motions hearing was proper, and indeed legally compelled under the circumstances, it follows that the trial Court did not abuse its discretion in refusing to grant the Motion for Reconsideration. Certainly, Plaintiff has failed altogether to establish that the trial Court's ruling was an "untenable judicial act" or "made on untenable grounds," against the logic and effect of facts and inferences before the court, or *unfairly* depriving a litigant of a substantial right and denying a just result. The Plaintiffs were certainly denied the right to go forward with this litigation, but the denial

---

**14.** Appellees overlook that appellants first sought to cure or clarify the Certificate by supplementing it with two affidavits of Dr. LeDez. Even assuming that the supplemental affidavits could not rectify an invalid Certificate, it is incorrect to imply that appellants took no action to cure any defect.

was not unfair under any circumstances; Plaintiffs had months, prior to the filing of Motions to Dismiss and the ultimate entry of judgment in this case, to seek some procedural method whereby they could file a second certificate of qualified expert that complied with the requirements of the statute. Plaintiffs failed to do this prior to the entry of judgment in this case, and as a consequence, the trial Court did not abuse its discretion in denying their Motion for Reconsideration.

In addition, appellees contend that appellants' motion for leave to file the Supplemental Certificate, *nunc pro tunc*, was not proper under either Maryland Rule 2–534 or 2–535. In support of this contention, they aver: "Both Rules are solely addressed to reopening the final judgment, and do not provide for any additional remedy, as alternatively requested by the Plaintiffs."

In reply, appellants complain that appellees have "misquoted the actual Certificate of Qualified Expert" by referring to the "health care providers" instead of "the Health Care Providers." They explain:

[I]t is undisputed that "Health Care Providers" identified in the Statement of Claim are the same ones to which Dr. LeDez was referring when he signed his Certificate of Qualified Expert. That is the exact purpose of capitalizing the H, C, and P in Health Care Providers and using the definite article "the", to make clear that the Certificate (and all other pleadings) are referring to the "health care providers named in the case."

## C.

We turn to consider whether appellants' Certificate facially complied with the Act. If it did not, we must determine whether, or under what circumstances, appellants were entitled to supplement or revise the Certificate to cure it, or obtain a good cause extension to file a new Certificate. In

undertaking our analysis, we are mindful of the principles of statutory construction.[15]

With respect to the content of the Certificate, we begin our analysis with a review of this Court's decision in *D'Angelo v. St. Agnes Healthcare, Inc., supra,* 157 Md.App. 631, 853 A.2d 813. Filed on July 14, 2004, i.e., several months *after* appellants filed suit in the circuit court, and well after the Certificate was filed with the HCAO, *D'Angelo* formed the basis for appellees' motions and the circuit court's dismissal.

In *D'Angelo,* the plaintiffs filed a claim with the HCAO, naming thirty-one defendants, including twenty-nine medical doctors. *Id.* at 637–38, 853 A.2d 813. The plaintiffs submitted two certificates both of which stated, in part, *id.* at 636–37, 853 A.2d 813 (emphasis omitted):

> I do further hereby certify that I have reviewed the medical records and films of Health Care Providers named in this claim, pertaining to the care and treatment rendered to Vincent D'Angelo from St. Agnes Hospital.
>
> Based upon my training, expertise and review, I have concluded that the foregoing medical providers failed to comply with the standards of care and that such failure was the proximate cause of the injuries to Claimant, Vincent D'Angelo.

However, in contrast to this case, the plaintiffs in *D'Angelo* did not submit the required reports from their certifying experts. *Id.* at 635 [853 A.2d 813]. Moreover, the certificates did not state that any of the defendants breached the standard of care, or that their conduct was the proximate cause of the alleged injuries. *Id.* Arbitration was waived, and the case proceeded to the circuit court. The *D'Angelo* defendants deposed the plaintiffs' certifying experts, who testified that they did not know the identity of the health care providers for whom their certificates were issued. *Id.* at 640 [853 A.2d 813].

---

**15.** We need not restate these well settled principles. They were recently reviewed comprehensively by the Court of Appeals in *Walzer v. Osborne,* 395 Md. 563, 577–84, 911 A.2d 427 (2006).

Thereafter, the circuit court granted the defendants' motions for summary judgment, on the ground that the certificates did not comply with C.J. § 3–2A–04(b).

On appeal, this Court upheld the dismissal, stating:

> The defect common to both certificates is that the certifying doctors said that they had "concluded that the *foregoing* medical providers failed to comply with the standard of care and that such failure was the proximate cause of the injuries to Claimant, Vincent D'Angelo." **But there is nothing in the certificate to indicate the identity of the health care providers who the experts believed rendered substandard care.** A related problem is that the certificates said that each expert had "reviewed the medical records and films of the Health Care Providers named in this claim," even though it was later learned that when the certificates were executed the certifying experts did not know the identity of *any* of the health care providers who were going to be named by plaintiffs' counsel in the HCAO suit.

*Id.* at 637, 853 A.2d 813 (italics in original; boldface added).[16]

The Court rejected the plaintiffs' contention that a certificate need not specify who violated the appropriate standard of care, as long as the expert certifies "that someone (*as yet unknown* ) breached the applicable standard and that someone's deviation from the appropriate standard of care proximately caused medical injury." *Id.* at 646, 853 A.2d 813 (emphasis added). It reasoned: "If such an interpretation were sanctioned, the certificate requirement would amount to a useless formality that would in no way help weed out nonmeritorious claims." *Id.* The Court added: "At the time plaintiffs filed their certificates, it was well established that the certifying doctor was required to say that he or she was of the opinion that the *defendants,* **who were named in the complaint,** deviated from the applicable standard of care and that the deviation proximately caused the plaintiff's injury."

---

16. We also pointed out that " 'St. Agnes Hospital,' which [was] mentioned in the caption of both certificates, [was] *not* named as a defendant in the statement of claims later filed by [the plaintiffs]." *Id.*

*Id.* (italics in original; boldface added). *See also Edward W. McCready Mem'l Hosp. v. Hauser,* 330 Md. 497, 501, 624 A.2d 1249 (1993) ("[T]he plaintiff must file a certificate of qualified expert ... attesting to a defendant's departure from the relevant standards of care which proximately caused the plaintiff's injury.") (emphasis added); *Witte v. Azarian,* 369 Md. 518, 521, 801 A.2d 160 (2002) ("[U]nless ... the claimant files with the HCAO a certificate of a qualified expert *attesting that the defendant's conduct constituted a departure from the standard of care* and that the departure was the proximate cause of the alleged injury, the claim must be dismissed with prejudice.") (Emphasis added).

Clearly, the *D'Angelo* Court did not condone that the experts signed the certificates "without any inkling as to whom [plaintiffs] planned to sue." 157 Md.App. at 648, 853 A.2d 813. Thus, we rejected the " 'Sue first and find out who is liable later' " approach, explaining that the filing of a certificate satisfying § 3–2A–04(b) "is a condition precedent that must be met before a claimant can proceed in circuit court with a suit against a named defendant." *Id.*

The recent case of *Walzer v. Osborne,* 395 Md. 563, 911 A.2d 427 (2006), is also pertinent. There, the Court determined that C.J. § 3–2A–04(b) requires the dismissal of a medical malpractice claim when the claimant files a certificate "without an attesting expert report attached thereto." *Id.* at 567, 911 A.2d 427. The Court expressly held that "the language of [C.J.] § 3–2A–04(b) mandates that the certificate of qualified expert be complete, with an attesting expert report attached, and that dismissal of the claim without prejudice is the appropriate remedy when the claimant fails to attach the report in a timely manner." *Id.*

The *Walzer* Court reasoned that, when the Legislature enacted C.J. § 3–2A–04 (b)(1)(i), it "clearly intended for claims to be dismissed if the claimant failed to file the certificate of qualified expert within 90 days of filing the complaint." *Id.* at 578, 911 A.2d 427. Moreover, the Court agreed with the defendants "that the General Assembly intended for the certif-

icate of qualified expert to consist of both the certificate and the attesting expert report, rendering incomplete, and therefore insufficient, a certificate of qualified expert filed without the report attached." *Id.* at 579, 911 A.2d 427.

Relying on *McCready Mem'l Hosp., supra,* 330 Md. at 512, 624 A.2d 1249, as well as "the clear language of the statute," *Walzer,* 395 Md. at 578, 911 A.2d 427, the Court ruled: "[W]e hold that the Statute clearly mandates dismissal, without prejudice, of a medical malpractice claim in which a claimant fails to file the required certificate of qualified expert within 90 days of filing the complaint." *Id.* The Court explained, *id.* at 579–80, 911 A.2d 427:

> Section 3–2A–04(b)(3)(i), provides that "[t]he attorney representing each party, or the party proceeding pro se, *shall* file the appropriate certificate with a report of the attesting expert *attached* " (emphasis added).... [T]he plain language of § 3–2A–04(b)(3)(i) is clear.... It is the Legislature's use of the words "shall" and "attach" that are dispositive, and demonstrate that the Legislature intended that the certificate of qualified expert consist of both the certificate and the attesting expert report. Black's Law Dictionary defines "attach" as "[t]o annex, bind or fasten," BLACK'S LAW DICTIONARY 136 (8th ed.1999), making clear that the General Assembly intended for the attesting expert report to be a part of the certificate of qualified expert and not for the report and certificate to constitute two separate and distinct documents. There exists no ambiguity as to the meaning of the word "attach."

> The term "shall" is also unambiguous.

* * *

In this case, we find no evidence to suggest that the Legislature intended for the attachment to be suggestive and hold, accordingly, based on the Legislature's chosen language, that a certificate of qualified expert must have an

attached attesting expert report in order to complete the certification.

The Court continued, *id.* at 582 [911 A.2d 427]:

Because the Legislature mandated that the expert report be attached to the certificate of qualified expert, we reject [plaintiff's] argument that the mandatory dismissal applies only to situations in which a claimant fails to file a certificate, and not to instances where a claimant files a certificate but fails to attach the report. We see no reason to differentiate these two situations.

\* \* \*

While based on somewhat different facts,[ ] we agree with the Court of Special Appeals' general statement in *D'Angelo v. St. Agnes Healthcare Inc.,* 157 Md.App. 631, 645, 853 A.2d 813, 822, *cert. den'd* 384 Md. 158, 862 A.2d 993 (2004), that "failure to file a proper certificate is tantamount to not having filed a certificate at all."

In reaching its result, the Court rejected the conclusion of this Court that the sanction of dismissal was "too harsh." It explained, *id.* at 584, 911 A.2d 427:

[T]he requirements of the filing process are clear, and, in cases where the claimants fail to adhere to the Statute, the claim will be dismissed without prejudice, allowing claimants, subject to the statute of limitations or other applicable defenses, an opportunity to begin the process anew. Furthermore, we have stated previously that we will dismiss actions when a party fails to follow a statutorily prescribed procedure[.] [17]

---

**17.** Interestingly, the court below was concerned with the adequacy of the expert's analysis, as set forth in the Certificate. Although that issue is not before us on appeal, we point out what the *Walzer* Court said, *id.* at 582–83, 911 A.2d 427:

While it is arguably unclear from the Statute exactly what the expert report should contain, common sense dictates that the Legislature would not require two documents that assert the same information. Furthermore, it is clear from the language of the Statute that the certificate required of the plaintiff is merely an assertion that the

*Webster v. Simmonds*, No. Civ. A. DKC 2003–3306, 2005 WL 14886 (D.Md. Jan. 3, 2005), also provides guidance. In that medical malpractice case, the plaintiffs filed a Statement of Claim specifically naming "Albert C. Simmonds, IV, M.D., Simmonds & Simmonds, Chtd., Maternity Center Associates, Ltd., Shady Grove Adventist Hospital, and Adventist Healthcare, Inc. as "Health Care Providers." [ ] However, the caption of the certificate delineated "Albert C. Simmonds, IV, et al." as the "Health Care Providers." *Id.* at *1, and the "body of the certificate did not name any of the health care providers...." *Id.* at *3. The certificate, signed by Michael Ross, M.D., a board certified physician, stated, in part: "In my opinion, to a reasonable degree of medical probability, the health care providers departed from the standard of care in this case, and these departures were a proximate cause of the claimants' injuries."

Thereafter, relying on *D'Angelo*, the defendants moved to dismiss the complaint, arguing that the plaintiffs filed a defective and invalid certificate. *Id.* at *2. In response, the plaintiffs filed a supplemental memorandum that revealed, *id.*,

> that, in October, 2004, [plaintiffs] filed a Line with the HCAO, submitting a "Supplemental Report" of Dr. Ross, consisting of two letters to counsel dated October 11, 2004 and February 25, 2004. In those letters, Dr. Ross states that he reviewed records of the Maternity Center and the hospital, and he identifies Dr. Simmonds and the three nurse midwives by name as among those health care providers, along with "the labor and delivery nurses at Shady Grove Adventist Hospital," whose deviations from the standard of care were the proximate cause of the medical injuries.

---

physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints.... It therefore follows that the attesting expert report must explain how or why the physician failed or did not meet the standard of care and include some details supporting the certificate of qualified expert.

Rejecting the defense challenge to the adequacy of the certificate, District Judge Deborah Chasanow explained, *id.* at *3 (emphasis added):

Although there is no Maryland case fully on point, the court concludes that the certificate, particularly as supplemented with the October 2004 filing, is sufficient as it relates to the original defendants.[ ] Surely Dr. Simmonds himself is included in the certificate. As the first named defendant, his name appears on the caption of the certificate.... *Here, the certificate refers to the health care providers named in the claim, rather than the unnamed "foregoing" health care providers as in D'Angelo. Here, there are only Dr. Simmonds and four entities included in the claim, rather than the more than two dozen individual health care providers involved in D'Angelo. Here, there is a "supplemental report" from Dr. Ross specifically attesting to his review of the medical records from the Maternity Center and Shady Grove* Adventist Hospital, and concluding that deviations from the standard of care occurred (1) at the Bethesda Birthing Center when the nurse midwives offered Mrs. Webster the option of staying there instead of expeditiously transferring her to the hospital, (2) when Dr. Simmonds did not come immediately to the hospital and evaluate Mrs. Webster for delivery, and finally, (3) when the cesarean was delayed.... In contrast, the available evidence in *D'Angelo* revealed that the certifying experts could not have reviewed relevant records and identified particular defendants as having deviated from the standard of care.[18]

■ From our review of the cases discussed above, we are persuaded that the circuit court erred in dismissing the case *sub judice* on the ground that the Certificate did not re-name all twelve appellees, but instead referred to them collectively as "Health Care Providers." *Walzer* and *D'Angelo* suggest

---

**18.** Judge Chasanow indicated that, as to the corporate employer-defendants, the certificate requirement was "met by naming the health care provider as to whom it applies," but did not extend to other employees of the entity who were not specifically named. *Id.* at *4. The same principle would apply here.

that the courts must strictly enforce the statute. However, these cases are distinguishable from the one at bar.

At the outset, *Walzer* focused primarily on the failure to file the medical report with the certificate. That circumstance is not at issue here. Moreover, *D'Angelo* is distinguishable because the attesting expert had absolutely no knowledge as to the identity of the persons (or entities) who had allegedly breached the standard of care or proximately caused the injuries, nor had the report been filed with the certificate. As we said, the identities of the particular health care providers were "as yet unknown" when the certificates were executed. *D'Angelo,* 157 Md.App. at 646, 853 A.2d 813. In this case, however, the identities of the particular health care providers were clearly known to the expert when the Certificate was executed, and the Certificate was accompanied by the required report.[19]

In the context of this case, we would be exalting form over substance if we were to reject appellants' Certificate on the ground that it did not specifically re-name each defendant/appellee. The Certificate cannot be analyzed in a vacuum; it must be considered in the context of the Statement of Claim that it supported, which had already been filed with the HCAO. In turn, the Statement of Claim precisely identified each health care provider alleged to be negligent, and then defined them collectively as "Health Care Providers." In context, it was abundantly clear that the term "Health Care Providers" was a defined term that constituted a shorthand reference to the discrete group of persons and entities previously identified in both the Claim Form and the Statement of Claim that had already been filed with the HCAO.

It is also salient that the caption of the Certificate used the abbreviation "et al." after the name of the one defendant listed in the caption. In legal circles, "et al." is a well known

---

**19.** As the affidavit and supplemental affidavit of Dr. LeDez make clear, his Certificate assessed the conduct of the individual physicians who had been sued and the entities that were sued in their vicarious roles as the employers or principals of the individual physicians.

abbreviation for the Latin words "et alii" or "et alia," meaning "and other persons." Black's Law Dictionary 373 (8th ed.2004). The use of that term clearly signaled that the Certificate was not limited to the one entity named in the caption, and referred back to the others previously named in the Statement of Claim.

C.J. § 3-2A-02(d) is also relevant. It provides that, unless otherwise indicated, "the Maryland Rules *shall* apply to all practice and procedure issues arising under this subtitle." (Emphasis added.) Maryland Rule 1-301(a) governs the "form of court papers" and provides: "An original pleading shall contain the names and addresses ... of all parties to the action.... *In other pleadings and papers, it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.*" (Emphasis added.) It is hard to conceive of a valid reason why, in principle, we should impose a more stringent standard for the form of a certificate than for pleadings filed in court.

Without question, that is precisely the methodology used by appellants. Each defendant was identified in both the Claim Form and the Statement of Claim, which were the initial filings in the HCAO. Moreover, for convenience, they were then collectively identified in both documents as "Health Care Providers." The Certificate, filed a few months later with the HCAO, in the very same case, used the defined term of Health Care Providers and the common legal shorthand of "et al." to refer to all the defendants previously identified.

To be sure, if appellants had re-named in the Certificate each person or entity listed in the Statement of Claim, this appeal would have been avoided. But, there is no serious question that the Certificate referred to all the defendants previously identified by appellants. Indeed, appellees never suggested that they did not know from the Certificate who had been named by appellants' expert as having breached the standard of care. Nor was there any protest at the HCAO of even a latent ambiguity in the Certificate. To the contrary, the Certificate was clear to anyone who was familiar with the

Statement of Claim that it referred to those persons and entities identified in the Statement of Claim. Consequently, it is ludicrous in the extreme to put appellants out of court for using a shorthand reference in the Certificate that the rules of procedure would permit had the Certificate been filed in court.

In reaching our conclusion, we are mindful that the purpose of the Certificate is to eliminate frivolous claims for substantive reasons. But, it was never meant to extinguish potentially substantive claims for frivolous reasons. We cannot uphold the draconian sanction of a dismissal, tantamount here to a dismissal with prejudice, when the spirit, if not the letter, of the statute was satisfied by the use of the abbreviation "et al.", and the defined term of "Health Care Providers," which everyone involved in the matter understood as a reference to the parties previously identified in the Statement of Claim.

Even assuming, arguendo, that the Certificate was flawed, it is difficult to ignore that, in response to the motions to dismiss, appellants promptly filed two affidavits from Dr. LeDez, who clarified that, by use of the term "Health Care Providers" in the Certificate, he was referring to all of the defendants named in the Statement of Claim. We see nothing in the statute that prohibited appellants from clarifying an alleged ambiguity of the nature at issue here by way of affidavits from the attesting expert.

Appellees maintain that appellants' Certificate cannot be cured by Dr. LeDez's supplemental affidavits. In support of this contention, appellees rely on *Debbas*, 389 Md. 364, 885 A.2d 802. There, the Court was asked to determine whether a facially valid certificate could be invalidated by allegedly inconsistent deposition testimony subsequently provided by the certifying medical expert. *Id.* at 366, 885 A.2d 802. The certifying expert attested in his certificate to breaches by three physicians but, at deposition, indicated that he would only testify at trial as to one.

In holding that the later deposition testimony did not invalidate the earlier certificate, the Court explained that, "if the General Assembly had intended discovery or any subsequent

event to be used as a mechanism to invalidate an otherwise valid Certificate, it could have so stated and converted the recognized gatekeeping function of the Certificate to a penultimate bar to litigation." *Id.* at 382, 885 A.2d 802. From this, appellees argue: "It is submitted that under the *Debbas* rationale, a certificate which is facially invalid for failing to identify the persons whom the certifier attests breached standards of care cannot be cured by later discovery, or by affidavit."

We see a distinction between relying on a discovery deposition to invalidate that which was valid when filed, and using an affidavit to cure an alleged defect in a certificate that was timely filed. In short, appellees seek to turn *Debbas* on its head. The filing of a certificate is a precondition to proceeding with the litigation. Thus, the thrust of *Debbas* is that a litigant whose certificate was valid when filed should not be put of court merely because an expert later changes his or her opinion. The change in opinion would certainly be pertinent with regard to the merits, and the defense would not be foreclosed from using it. In contrast, if appellees' position were adopted, it would terminate the litigation in its entirety, without ever permitting the plaintiffs an opportunity for consideration of the merits.

In *Webster*, discussed *supra*, Judge Chasanow rejected a challenge similar to the one advanced here. Although only the first named defendant appeared in the caption of the certificate in that case, the *Webster* Court determined that the use of the phrase "health care providers" referred to those named in the claim, and the "supplemental report" of the expert resolved any confusion. In contrast to *D'Angelo*, in which the evidence showed that the expert "could not have . . . identified particular defendants as having deviated from the standard of care," Judge Chasanow was satisfied that the expert in that case had opined as to the defendants named in that suit. Similarly, even assuming the Certificate here was flawed, Dr. LeDez's affidavits rectified that which appellants believed was valid when filed. The cure would enable appellants to have their day in court.

■ Appellees also suggest that appellants are not entitled to good cause relief, so as to permit them to refile the Certificate. They complain that while *D'Angelo* was issued in July of 2004, appellants "took no action to substitute a proper Certificate of Qualified Expert, despite the fact that service of process was not even accomplished on the Defendants until sometime in October of that year," nor did they make any attempt to procure an extension of time to file "a proper certificate of merit" prior to the entry of judgment on February 2, 2005. Therefore, they aver: "Plaintiffs can hardly claim 'good cause' for this delay under these circumstances, even if their 'Motion for Leave to File Supplemental Certificate of Qualified Expert, *Nunc Pro Tunc* had been properly filed procedurally, which it was not."

In support of their argument that the circuit court lacked the authority to render a ruling permitting the filing of a certificate *nunc pro tunc*, appellees rely on *Watts v. King,* 143 Md.App. 293, 794 A.2d 723 (2002), *disapproved on other grounds, Salvagno v. Frew,* 388 Md. 605, 881 A.2d 660 (2005). *Watts* involved a dental malpractice claim in which the claimant filed an expert's certificate that did not comply with C.J. § 3–2A–04(b)(1)(i). *Id.* at 305–06, 794 A.2d 723. Specifically, the Certificate did not attest to a departure from the standard of care by the dentist whose conduct allegedly was the proximate cause of the injuries. *Id.* at 309, 794 A.2d 723. The HCAO dismissed the claim, in part, because the certificate did not contain the required attestation. *Id.* at 299, 794 A.2d 723. On appeal, we analogized the claimant's "failure to file a certificate that meets the statutory requirements to the cases in which no certificate was filed." *Id.* at 309, 794 A.2d 723. Because filing the required certificate was "an indispensable step in the arbitration process," we held that the claim had not been properly arbitrated before the HCAO, and thus could not be considered by the circuit court. *Id.* at 310, 794 A.2d 723.

In our view, *Watts* would not necessarily foreclose a request to refile a flawed Certificate, based on good cause. *McCready Memorial Hospital, supra,* 330 Md. 497, 624 A.2d 1249, is instructive. There, the plaintiffs filed their claim just a few

days before limitations ran. When no certificate was filed within the 90–day period, the defendants moved to dismiss the claim. However, 111 days after the claim was filed, the plaintiffs requested a 90–day extension under C.J. § 3–2A–04 (b)(1)(ii), alleging that because limitations had run, dismissal was not an option, and the failure to file the certificate was neither willful nor the result of gross negligence. Nevertheless, the plaintiffs did not seek a "good cause" extension under C.J. § 3–2A–04(b)(5) or § 3–2A–05(j), nor did they provide any explanation for their default. Thereafter, the panel chairman dismissed the claim. Even by then, no certificate had been filed. The plaintiffs then filed a complaint in the circuit court, which was dismissed.

The Court of Appeals affirmed the circuit court. In reaching its decision, the Court explained, *id.* at 512–13, 624 A.2d 1249:

A claimant's filing of an expert's certificate is an indispensable step in the HCAO arbitration process. In the case *sub judice,* the [plaintiffs] failed to comply with the requirements of subparagraph (b)(1)(ii) by failing to file the required certificate of qualified expert during either the initial 90–day period or the 90–day extension period. Indeed, the [plaintiffs] conceded at oral argument before this Court that they have not yet obtained an expert's certificate. While the [plaintiffs] did file a *request* for an extension within the first 90–day period, a bare request for an extension does not toll the second 90–day time period under § 3–2A–04 (b)(1)(ii). Where a claimant seeks a § 3–2A–04(b)(1)(ii) extension, it must file the expert's certificate within the second 90–day period, *i.e.,* within 180 days from the initial filing of the claim. We need not decide whether the [plaintiffs] would have been entitled to an extension upon a showing of good cause because they neither sought one of the good cause extensions nor alleged that good cause existed for their failure to timely file an expert's certificate. As a result, the [plaintiffs] failed to arbitrate their claim as required by the Statute. The circuit court correctly dismissed the action.

Of import here, the Court explained in *McCready,* 330 Md. at 508, 624 A.2d 1249, that the statutory extension provisions require the claimant to establish good cause to obtain an extension, but *"are silent as to the timing of a request, and they do not expressly limit the length of any extension."* (Emphasis added.)

Here, appellants timely filed their Certificate with the HCAO.[20] Therefore, this case is unlike those that have considered a belated request for a 90–day extension under C.J. § 3–2A–04 (b)(1)(ii), and is unlike those in which a certificate was never filed. At the time of filing the Certificate, appellants believed that it conformed to the statutory requirements. Moreover, appellees did not complain about the alleged defect at a time when appellants had time to cure the defect, i.e., within 180 days.[21] By the time *D'Angelo* was decided, the time had expired to file for an extension under C.J. § 3–2A–04 (b)(1)(ii). But, *McCready* suggests that appellants retained the right to seek an extension of time to file a revised certificate under C.J. § 3–2A–04(b)(5).

*Navarro–Monzo v. Washington Adventist Hospital,* 380 Md. 195, 844 A.2d 406 (2004), supports that view. Writing for the Court, Judge Wilner noted that the various provisions concerning the time for filing a Certificate "may be read together without any difficulty." *Id.* at 204, 844 A.2d 406. Indeed, given "the harshness of the penalty . . . for failing to file a certificate within the initial 90–day period," *id.,* i.e., dismissal of the claim, he pointed out that the General Assembly created "three distinct, but complementary, escape valves": C.J. §§ 3–2A–04 (b)(1)(ii), 3–2A–04 (b)(5), and § 3–2A–05 (j). *Id.* In addition to the "mandatory extension"

---

**20.** As noted, appellants filed their claim with the HCAO on November 19, 2003; on February 12, 2004, they requested an extension for filing the Certificate; and they filed their Certificate on February 17, 2004.

**21.** As noted previously, even when suit was filed in circuit court, several of the defendants initially answered the suit, without objecting to the quality of the Certificate on the grounds that later culminated in dismissal of the suit.

afforded under § 3–2A–04(b)(1)(ii), *id.* at 205, 844 A.2d 406, the Court underscored that the Director and the panel chair "retain the authority to grant a further extension, beyond 180 days from filing of the claim, upon a showing of good cause." *Id.*

*Navarro–Monzo* seems to suggest that an order may be entered under § 3–2A–04 (b)(5) "based on an implicit finding of good cause." *Id.* at 204, 844 A.2d 406. That Court looked to *McCready, supra,* 330 Md. at 506 n. 5, 624 A.2d 1249 stating: "We expressly recognized that prospect in *McCready,* noting that 'there could conceivably be instances where there might be "good cause" to grant a request for an extension that was made after the initial ninety-day period in lieu of dismissing the claim.'" *Navarro–Monzo,* 380 Md. at 204, 844 A.2d 406. The Court added: "Indeed, §§ 3–2A–04(b)(5) and 3–2A–05(j) would have little or no meaning unless read to permit good cause extensions over and above the mandatory extension called for in § 3–2A–04(b)(1)(ii)." *Id.* Of import here, the *Navarro–Monzo* Court rejected the defendants' contention that any extension sought under C.J. § 3–2A–04(b)(5) or § 3–2A–05(j) must be requested *before* the expiration of the 90–day extension obtained under § 3–2A–04 (b)(1)(ii). *Id.* at 200, 844 A.2d 406. It stated that the Director or panel chair has authority to grant an extension, "without any fixed statutory limit," for good cause shown. *Id.* at 204, 844 A.2d 406.

Plainly, the statute does not expressly limit such authority to the Director or panel chair. Indeed, neither one is actually mentioned in the provision. Considering that the certificate requirement is in derogation of the common law, *Walzer,* 395 Md. at 577, 911 A.2d 427, we decline to add words to the statute that were not included by the Legislature. It follows that a circuit court would have authority to extend the time for filing of a certificate, for good cause shown.[22] Even if that is

---

**22.** As noted, in the legislative amendments passed in 2004, the General Assembly expressly authorized "the court" to approve the 90–day extension.

not so, at the very least the circuit court would have authority to permit a plaintiff to present such a request to the Director.

In their revisory motion, appellants asked the court to reconsider its ruling, or permit the filing of a revised Certificate based on good cause. On the facts of this case, in which appellants timely filed a Certificate whose alleged flaws came to light on the basis of an appellate opinion filed months later, and where a dismissal without prejudice was the same as a dismissal with prejudice because limitations had expired, we believe the court should have vacated the judgment and permitted appellants to seek a good cause extension, either from the court itself or the Director.

**DR. BURNS'S MOTION TO DISMISS APPEAL DENIED. JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEES.**